IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY O. WILLIAMS, | § | |
| GEORGE BUSH, and GCW, LLC | § | PLAINTIFFS |
| | § | |
| v. | § | CAUSE NO. 1:07CV906 LG-JMR |
| | § | |
| CITY OF GULFPORT, MISSISSIPPI | § | |
| and JOHN DOES 1-5, in their | § | |
| individual capacities | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**
**REGARDING STANDING AND IMMUNITY ISSUES**

**THE MATTER BEFORE THE COURT** is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 56 and/or Other Grounds [6], filed by the City of Gulfport, Mississippi. The Court previously denied all grounds for relief other than the issues of immunity and standing, which it reserved pending further briefing by the parties. The Plaintiffs filed a brief in support of their position on standing and immunity. The City did not file any further briefing. After due consideration of the parties' submissions, arguments, and the relevant law, it is the Court's opinion that GCW, LLC, and George Bush have standing to bring this lawsuit; Mary O. Williams does not. Further, the City of Gulfport does not enjoy legislative immunity from Plaintiffs' claims, but is entitled to assert its defense of sovereign immunity from liability.

FACTS AND PROCEDURAL HISTORY

GCW, LLC, owns property located at 740 Beach Drive in Gulfport, Mississippi. Mary O. Williams is the sole member of GCW, LLC. Beginning in 2001, the LLC leased the property to George Bush and Darline Bush, doing business as Club Illusion. Ct. R. 59-2. In 2004, the parties extended the lease to October 31, 2007. *Id*. at 16. The Bushes operated a nightclub at the property until the building was destroyed by Hurricane Katrina in August 2005, leaving only a

slab.

Plaintiffs allege that soon after Hurricane Katrina destroyed the building, they began planning to rebuild, engaging an architectural firm in March 2006. The slab was removed in April. Through the spring and summer of 2006, the Plaintiffs' architect created plans for a new building and was in contact with City officials in the Planning and Urban Development Department.

Plaintiffs further allege that in July 2006, Mayor Warr "undertook by executive fiat to amend the City's Zoning Ordinance in an apparent effort to exclude the Plaintiffs' operation of Club Illusions [sic] in front of his father's strip mall." Am. Compl. ¶XIV. This amendment was allegedly accomplished through Ordinance number 2482, passed by the Gulfport City Council on July 18, 2006. This Ordinance reads in part:

> WHEREAS, within Sec. VII, Subsection (C)(3) of the Zoning Ordinance it is further provided that when permitted nonconforming structures are destroyed or damaged by act of God, the structure may be replaced or repaired on condition that application for a building permit be made within one (1) year from the time the structure was destroyed; and
>
> WHEREAS, . . . it is hereby recognized that enforcement of the nonconforming structure limitations on residential disaster victims will detrimentally affect land values and impede the ability or desirability of the homeowners to rebuild, and shall have an overall detrimental impact on restoration of the City of Gulfport, . . .
>
> WHEREAS, the governing body of the City of Gulfport finds it necessary to encourage reconstruction and assist displaced residential property owners in returning to or receiving value for their properties by amendment as soon as possible to the Zoning Ordinance as it relates to limitations on nonconforming structures, . . .
>
> NOW THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GULFPORT, MISSISSIPPI, AS FOLLOWS:

. . .

SECTION TWO. ORDINANCE NO. 1501, AS AMENDED, AND KNOWN AS THE COMPREHENSIVE ZONING ORDINANCE OF THE CITY OF GULFPORT BE, AND IT IS HEREBY AMENDED . . .

SUBSECTION (C) PARAGRAPHS (2) AND (3) ARE REVISED AND AMENDED, EACH TO READ IN THEIR ENTIRETY, AS FOLLOWS:

. . .

(3) *Replacement.* (a) Commercial Use Structures. Should such nonconforming structure of commercial use be destroyed or damaged by an act of God, including tornado, hurricane, flood, wind, earthquake, etc., . . . the structure may be replaced or repaired. However, such replacement or repair shall be subject to the following provision: Application for a building permit must be made to the building official within one year of the time that the structure was destroyed. However, in cases of hardship the mayor and city council shall at their sole discretion have the authority to extend such one-year limitation for additional periods of time up to six (6) months each upon application of the owner or leaseholder prior to the expiration of the allowable nonconformity.

Ct. R. 23-13.

The City determined that Club Illusion was a nonconforming structure or use subject to this Ordinance, and denied Plaintiffs' September 19, 2006 permit request. The City first stated the denial was because the plans were incomplete. After Plaintiffs appealed the denial, the City's Board of Adjustment determined that the permit request was properly denied because Plaintiffs' application had not been made within one year of the time the nonconforming structure was destroyed.

Plaintiffs assert that in enacting this Ordinance, the City did not fully comply with the notice requirements in the Zoning Ordinance, or as required by state law. Further, they claim the Ordinance infringes on their rights to rebuild and use the property, violating their Constitutional rights to due process and equal protection for which they seek redress pursuant to 42 U.S.C. §

1983. Plaintiffs also bring state law claims of civil conspiracy and intentional infliction of emotional distress against the John Doe defendants, in their individual capacities. They request an injunction commanding the City to issue a building permit; a declaration that Ordinances 2482 and 2512 are unconstitutional; compensatory damages of $2 million for each Plaintiff, and $5 million in punitive damages assessed against the individual defendants. Plaintiffs filed this suit while the lease on the property was in effect.

## STANDING

Under Article III of the United States Constitution, federal courts are confined to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. Standing, one of the doctrines arising under the case and controversy requirement, requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.' " *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

The evidence provided by the parties establishes that GCW, LLC is the owner of the property. As owner of property subject to the complained-of actions by the Defendants, the LLC can show all three elements of the test for standing. However, Mary Williams's status as sole member of the LLC does not confer standing for purposes of this lawsuit. The violations of rights alleged here must be asserted through the LLC. MISS. CODE ANN. § 79-29-305(2) (a member of a limited liability company is not a proper party to a proceeding by a limited liability

company, by reason of being a member).

The Court also concludes that George Bush's status as lessee gives him standing to challenge the zoning ordinances that affect his leasehold interest. *See Kerssenbrock-Praschma v. Saunders*, 48 F.3d 323, 326 (8th Cir. 1995) ("There is a substantial body of law recognizing that the owner of an interest in the affected property has standing to challenge the restriction.") (citing, *inter alia*, *Huntington Branch NAACP v. Town of Huntington*, 689 F.2d 391, 395 (2d Cir. 1982) (owner of option to purchase land); *Horizon House v. Twp. of Upper Southampton*, 804 F. Supp. 683, 692 (E.D. Pa. 1992) (operator-lessee of leased group homes)).

Accordingly, GCW, LLC, and George Bush may proceed in this action. Mary Williams's claims will be dismissed for lack of standing.

## LEGISLATIVE IMMUNITY

The City contends that it enjoys absolute legislative immunity in regard to Plaintiffs' civil rights complaints about the enactment of the Ordinances. The Fifth Circuit has noted in *dicta* that a municipality itself "does not enjoy immunity from suit, either absolute or qualified, under § 1983." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 272 n.5 (5th Cir. 2000). Instead, "[l]egislative immunity protects officials fulfilling legislative functions . . . [a]nd absolute immunity only protects those duties that are functionally legislative, not all activities engaged in by a legislator." *Id*. at 272. Thus, in the event any individual City officials are named and included in this suit, the Court will be required to examine those individuals' actions to determine if legislative immunity applies. The City itself has no claim to legislative immunity.

## SOVEREIGN IMMUNITY

The City contends that it is sovereignly immune from Plaintiffs' state law tort claims,

citing the Mississippi Tort Claims Act, Miss. Code § 11-46-9(1)(a), (b), (e) and (h). Plaintiffs make their intentional infliction of emotional distress claim only against the individual defendants. Am. Compl. ¶ XXXVII. It appears that the conspiracy claim may include the City as well. *Id*. at ¶XXXIV. The Plaintiffs allege that officials and employees of the City conspired to erect obstructions to the Plaintiffs' rebuilding their business and to deny them the continued lawful use of their property. *Id*. The Court will examine the City's immunity to the conspiracy claim, in the event Plaintiffs have made such a claim.

The purpose of the MTCA is to provide a remedy to claimants who have suffered injuries because of torts committed by governmental entities and their employees while acting within the course of their employment. MISS. CODE ANN. § 11-46-5(1). The MTCA provides a single method for claimants to recover against governmental entities; it does not shield an entity from all liability. The MTCA delineates which claims are not permitted under the MTCA; all other tort claims may be brought pursuant to the statute. Miss. Code Ann. sections 11-46-9(1)(a-y) list twenty-five separate immunities.

The Mississippi Court of Appeals held in *Pearl River Valley Water Supply v. Bridges,* that if a court determines that any one of the MTCA immunities applies, a claim for money damages cannot be maintained. "Applicability of any one of these sections creates immunity." *Pearl River Valley Water Supply v. Bridges*, 878 So. 2d 1013, 1016 (Miss. Ct. App. 2004). "[T]he state cannot be held liable for damages if the conduct falls within one of the exceptions found in Miss. Code Section 11-46-9." *State v. Hinds County Bd. of Supervisors*, 635 So. 2d 839, 842 (Miss. 1994).

The City contends that the following exemptions are applicable to the Plaintiffs'

conspiracy claim:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> > (a) Arising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
> >
> > (b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
> >
> > . . .
> >
> > (e) Arising out of an injury caused by adopting or failing to adopt a statute, ordinance or regulation;
> >
> > . . .
> >
> > (h) Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature;

MISS. CODE ANN. § 11-46-9.

Applying these provisions, it appears clear that the City's adoption of the Ordinances, regardless of whether the method was proper, is a matter which will not give rise to a claim for damages under 11-46-9(a) and (e). Further, the City's reliance on the Ordinances in denying a building permit does not give rise to a claim for damages under 11-46-9(b). Applicability of these sections creates immunity for the City as to Plaintiffs' tort claim of conspiracy. Accordingly, Plaintiffs' conspiracy claim against the City should be dismissed with prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the claims of Mary O. Williams are **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Plaintiffs' state law tort claim of conspiracy against the City of Gulfport is **DISMISSED** with prejudice.

**SO ORDERED AND ADJUDGED** this the 7th day of May 2010.

s/*Louis Guirola, Jr.*
Louis Guirola, Jr.
United States District Judge