IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY O. WILLIAMS, § | | |
| GEORGE BUSH, and GCW, LLC § | | PLAINTIFFS |
| § | | |
| v. § | | CAUSE NO. 1:07CV906 LG-JMR |
| § | | |
| CITY OF GULFPORT, MISSISSIPPI § | | |
| and JOHN DOES 1-5, in their § | | |
| individual capacities § | | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

THE MATTERS BEFORE THE COURT are (1) the "Re-Filed Motion of City of Gulfport, Mississippi to Dismiss Pursuant to Fed. R. Civ. P. 56 and/or Other Grounds" [61]; and (2) the "Re-filed Motion of City of Gulfport, Mississippi to Strike Documents Submitted By Plaintiffs In Response to Its Motion For Summary Judgment and For Other Relief" [70]. The Plaintiffs have responded to the summary judgment motion but not to the motion to strike.[1] After due consideration of the submissions of the parties, it is the Court's opinion that summary judgment is warranted, as there is no question of material fact for the jury in regard to the claims against the City. In addition, the Court has not relied on any of the documents objected to by the City in its Motion to Strike. Accordingly, that Motion is moot.

FACTS AND PROCEDURAL HISTORY

GCW, LLC, owns property located at 740 Beach Drive in Gulfport, Mississippi. Beginning in 2001, the LLC leased the property to George Bush and Darline Bush,

---

[1] The Court previously found that, of the three named Plaintiffs, only GCW, LLC and George Bush have standing to assert the claims in the Amended Complaint.

doing business as Club Illusion. ECF No. 59-2. In 2004, the parties extended the lease to October 31, 2007. *Id*. at 16. The Bushes operated a nightclub at the property until the building was destroyed by Hurricane Katrina in August 2005, leaving only a slab.

Plaintiffs allege that soon after Hurricane Katrina destroyed the building, they began planning to rebuild, engaging an architectural firm in March 2006. The slab was removed in April. Through the spring and summer of 2006, the Plaintiffs' architect created plans for a new building and was in contact with City officials in the Planning and Urban Development Department. During this time, City officials required a number of changes to the plans.

Plaintiffs further allege that in July 2006, Mayor Warr "undertook by executive fiat to amend the City's Zoning Ordinance in an apparent effort to exclude the Plaintiffs' operation of Club Illusions [sic] in front of his father's strip mall." Am. Compl. ¶XIV. This amendment was allegedly accomplished through Ordinance number 2482, passed by the Gulfport City Council on July 18, 2006. The Ordinance reads in part:

> WHEREAS, within Sec. VII, Subsection (C)(3) of the Zoning Ordinance it is further provided that when permitted nonconforming structures are destroyed or damaged by act of God, the structure may be replaced or repaired on condition that application for a building permit be made within one (1) year from the time the structure was destroyed; and
>
> WHEREAS, . . . it is hereby recognized that enforcement of the nonconforming structure limitations on residential disaster victims will detrimentally affect land values and impede the ability or desirability of the homeowners to rebuild, and shall have an overall detrimental impact on restoration of the City of Gulfport, . . .

> WHEREAS, the governing body of the City of Gulfport finds it necessary to encourage reconstruction and assist displaced residential property owners in returning to or receiving value for their properties by amendment as soon as possible to the Zoning Ordinance as it relates to limitations on nonconforming structures, . . .
>
> NOW THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GULFPORT, MISSISSIPPI, AS FOLLOWS:
>
> . . .
>
> SECTION TWO. ORDINANCE NO. 1501, AS AMENDED, AND KNOWN AS THE COMPREHENSIVE ZONING ORDINANCE OF THE CITY OF GULFPORT BE, AND IT IS HEREBY AMENDED . . .
>
> SUBSECTION (C) PARAGRAPHS (2) AND (3) ARE REVISED AND AMENDED, EACH TO READ IN THEIR ENTIRETY, AS FOLLOWS:
>
> . . .
>
> (3) *Replacement.* (a) Commercial Use Structures. Should such nonconforming structure of commercial use be destroyed or damaged by an act of God, including tornado, hurricane, flood, wind, earthquake, etc., . . . the structure may be replaced or repaired. However, such replacement or repair shall be subject to the following provision: Application for a building permit must be made to the building official within one year of the time that the structure was destroyed. However, in cases of hardship the mayor and city council shall at their sole discretion have the authority to extend such one-year limitation for additional periods of time up to six (6) months each upon application of the owner or leaseholder prior to the expiration of the allowable nonconformity.

ECF No. 23-13.

Prior to this amendment, the provision read:

> 3. <u>Replacement.</u> Should such nonconforming structure be destroyed or damaged by an act of God, including tornado, hurricane, flood, wind, earthquake, etc., or accident not caused purposefully by the owner or tenant, the structure may be replaced or repaired. However, such replacement or repair shall be subject to the following provision:

  a. Application for a building permit must be made to the Building Official within one year of the time that the structure was destroyed. However, in cases of hardship the Mayor and Board of Commissioners shall at its discretion have the authority to extend said one-year limitations for additional periods of time upon application of the owner or leaseholder.

ECF No. 61-4 p. 51-52.

The City determined that Club Illusion was a nonconforming structure and denied Plaintiffs' September 19, 2006 application for a building permit. The City first stated the denial was because the plans were incomplete and because the application violated Section VII(C)(3)(A) "Replacement of Nonconforming Structures." After Plaintiffs appealed the denial, the City's Board of Adjustment determined that the permit request was properly denied because Plaintiffs' application had not been made within one year of the time the nonconforming structure was destroyed.

 The Plaintiffs filed this suit alleging federal and state law claims. The City requested summary judgment in regard to the claims remaining against it - that the Ordinance infringes on Plaintiffs' right to rebuild and use the property, violating their Constitutional rights to due process and equal protection for which they seek redress pursuant to 42 U.S.C. § 1983.[2]

The Court granted the summary judgment motion by Order dated September

---

[2] The Plaintiffs also alleged that in enacting this Ordinance, the City did not give them actual notice as required by the City's zoning amendment procedures and by MISS. CODE § 17-1-17. However, they apparently assert that claim only as to Mary O. Williams, who does not have standing in this case. *See* Pls.' Br. in Opp'n 5 (¶XI), ECF No. 10. Accordingly, it is a moot issue. Further, the Court previously dismissed any quiescent state law claim of civil conspiracy against the City.

17, 2010.  Plaintiffs then filed two motions to reconsider, alleging that they had been unable to present necessary evidence because of the punctuated and abbreviated discovery periods in this case.  For the reasons stated in the Court's Order granting the second motion to reconsider, the Court determined that the deposition testimony recently obtained by Plaintiffs should be evaluated in connection with the City's summary judgment motion.  The Plaintiffs' evidence in support of their motions to reconsider has now been examined, as has the City's reply brief.  The evidence does not create a question of material fact for the jury.  Accordingly, the Order granting summary judgment will be reinstated as follows.

Substantive Due Process:

The Fifth Circuit has deemed a municipality's regulatory decisions regarding zoning and land use to be quasi-legislative, and accordingly, subject to deferential and limited scrutiny by the courts.  *Shelton v. City of College Station*, 780 F.2d 475, 482-83 (5th Cir. 1986).  A federal court is to overturn such decisions only if the municipality "could have no legitimate reason for its decision."  *Id*. at 483.

> We do not suggest that a zoning decision can be justified by mouthing an irrational basis for an otherwise arbitrary decision. A denial of a building permit on the King Ranch because of inadequate parking might fall into this category. The key inquiry is whether the question is "at least debatable."  *See* [*Minnesota v.*] *Clover Leaf Creamery Co.*, 449 U.S. [456] [], 464 [] [1981].  If it is, there is no denial of substantive due process as a matter of federal constitutional law.

*Id*.  "The essence of a substantive due process claim is that a decision by a governmental body is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Village of Euclid v.*

*Ambler Realty Co.*, 272 U.S. 365, 395 (1926).

Here, the City has articulated a legitimate reason for denying Plaintiffs a building permit - the Zoning Ordinance, both before and after amendment, required that application be made within one year after destruction of a non-conforming structure. This reason was referenced by the City when it notified Plaintiffs that the permit request had been denied. *See* ECF No. 93-11. Regardless of the recollection of certain City employees who worked on the permit application that there was no problem with the application, the City's official act was to deny the permit for this (and one additional) reason. Plaintiffs do not dispute that their application was made more than one year after their non-conforming structure was destroyed by Hurricane Katrina. Imposing and enforcing this deadline is rationally related to the City's interest in reducing the number of structures that are not compatible with the neighborhood around them. Accordingly, the Court finds no denial of substantive due process.

The Plaintiffs also argue that the Ordinance is unconstitutionally vague because it leaves the decision to grant a six-month extension of time to apply for a permit to the discretion of Mayor and the city council. The Court discerns no practical difference between this exercise of discretion and the discretion exercised in deciding whether to issue a permit at all. Rather than being unconstitutionally vague, this provision of the Ordinance allows for the exercise of discretion by the City within its zoning authority, which is always subject to the requirement that it not be exercised arbitrarily or capriciously. *See Shelton*, 780 F.2d at 483.

Plaintiffs make an additional argument that because they had begun construction prior to the amendment of the Zoning Ordinance, the amendment would not alter the "plans, construction or designated use" of their structure. The language relied upon by Plaintiffs appears in the "Intent of Regulations" subsection of Section VII, "Nonconforming Uses and Structures," and reads:

> 2. <u>Construction Begun Prior to Ordinance</u>. To avoid undue hardship, nothing in this ordinance shall be deemed to require a change in the plans, construction or designated use of any structure on which actual construction was lawfully begun prior to the effective date of this ordinance or of amendment thereto and upon which actual building construction has been carried on diligently. Actual construction is hereby defined to include the placing of construction materials in permanent position and fastened in a permanent manner. Where excavation or demolition or removal of an existing structure has been substantially begun preparatory to rebuilding, such excavation or demolition or removal shall be deemed to be actual construction, provided that work shall be carried on diligently.

ECF No. 61-4 p. 50

Because their argument is undeveloped, it is not clear how Plaintiffs claim their plans were required to change by the amendment to the Zoning Ordinance. The one-year permit application period remained the same from original to amendment. Nothing about the amendment required a change in the plans, construction or designated use of Plaintiffs' structure. Furthermore, even if the City's decision to deny a permit in the face of this provision was incorrect, "the due process clause does not require a state to implement its own law correctly, nor does the Constitution insist that a local government be right." *Bryan v. City of Madison*, 130 F. Supp. 2d 798, 811 (S.D. Miss. 1999) (citations and quotation marks omitted).

Because the Plaintiffs have failed to show the existence of material fact for the

jury, the City is entitled to judgment as a matter of law in regard to Plaintiffs' substantive due process claims.

Equal Protection:

The Equal Protection Clause of the Fourteenth Amendment essentially requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiffs claim that they were singled out for unfair treatment by the City because of the Mayor's personal animus against their business. The U.S. Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000).

The Plaintiffs argue that Grasslawn, an historic recreational facility owned by the City, was granted a permit to rebuild three years after Katrina. Plaintiffs were not able to obtain any deposition testimony regarding the Grasslawn application, but have attached the application itself. *See* ECF No. 93-5. The form shows that Grasslawn required a permit from the Planning Commission because of its non-conforming *use*. The structure itself was conforming. The Zoning Ordinance provision at issue in this case (with its one-year deadline) is applicable to non-conforming *structures*; it says nothing about non-conforming *use*. Thus, Plaintiffs have not shown a question of material fact for the jury regarding whether the City granted a permit to an applicant in Plaintiffs' circumstances. The City is entitled to summary judgment in regard to Plaintiffs' Fourteenth Amendment Equal Protection claim.

Equitable Estoppel:

Plaintiffs claim that the City should be equitably estopped from denying their application for a building permit. They contend that they spent approximately $20,000 on architectural plans and other preparatory work before the City denied their application. Plaintiffs argue that City employees gave no initial indication that they would enforce the one-year deadline in the Zoning Ordinance, and in fact began reviewing Plaintiffs' building plans and requiring changes.

The doctrine of equitable estoppel may be applied against the state and its municipalities. The following factual elements are a prerequisite to the application of the doctrine: (1) belief and reliance on some representation; (2) change of position, as a result thereof; and (3) detriment or prejudice as a result of the change of position. *Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 432 (Miss. 2004).

According to their chronology, Plaintiffs began their preparatory work and discussions with City building officials well before they submitted their application for a permit. *See* Pls.' Br. in Opp'n 7-9, ECF No. 10. When City building officials were reviewing Plaintiffs' plans in March of 2006, they could not have known that Plaintiffs would apply for a permit after the one-year deadline of August 29, 2006. Clearly, the Plaintiffs could not have reasonably relied on, or changed their position as a result of, the City's failure to address the late permit application prior to application being made. Therefore, the factual prerequisites have not been met and equitable estoppel is not applicable in this case.

However, even if the factual prerequisites have been met, the Mississippi

Supreme Court has limited the application of equitable estoppel to municipalities, only allowing it where there has been official action by the governing body. *Welch*, 888 So. 2d at 433. For example, a zoning ordinance is an official action of the city. *Id*. However, an individual, such as a building inspector, cannot speak on behalf of the city. *Id*. Thus, when in the *Welch* case a city building inspector had informally granted permission for a landowner to construct a tree house, and inspectors had subsequently been on the property and not questioned the legality of the tree house, the city was not bound to allow the tree house by application of equitable estoppel. *Id*. at 432. From this, the Court concludes that the pre-permit words and actions of a city employee cannot justify application of the doctrine of equitable estoppel. It is undisputed that the City in this case did not issue a permit to Plaintiffs. The City's official action was to deny the permit application. The words and actions of City employees prior to that point cannot give rise to an equitable estoppel claim. The City is therefore entitled to judgment as a matter of law.

<u>The City's Motion to Strike</u>:

The City objects to the authenticity and admissibility of certain documents attached to Plaintiffs' response to the summary judgment motion. Because it was not necessary for the Court to rely upon any of these documents in ruling on the summary judgment motion, the Motion to Strike is moot.

<u>The State Law Claims</u>:

Plaintiffs allege two pendent state law claims, for civil conspiracy and intentional infliction of emotional distress. These claims remain pending only against

the John Doe Defendants. The Plaintiffs allege that the John Does are officers, agents or employees of the City, and individuals who acted in concert with City officers, agents or employees in connection with Plaintiffs' permit application. *See* Am. Compl. 3 (¶VI), ECF No. 22. Despite the three-year pendency of this case, Plaintiffs have not attempted to name and serve the John Doe Defendants. Under these circumstances, the Court will exercise its discretion to decline to retain supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). The claims will be dismissed without prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Re-Filed Motion of City of Gulfport, Mississippi to Dismiss Pursuant to Fed. R. Civ. P. 56 and/or Other Grounds [61] is **GRANTED**. Plaintiffs' claims against the City of Gulfport are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Re-filed Motion of City of Gulfport, Mississippi to Strike Documents Submitted by Plaintiffs In Response to its Motion for Summary Judgment and for Other Relief [70] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Plaintiffs' claims against the John Doe Defendants are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 7th day of February, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE